MDR

WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Taheny,<br><br>          Plaintiff,<br><br>v.<br><br>David Shinn, et al.,<br><br>          Defendants. | No.   CV 23-00194-PHX-JAT (JZB)<br><br>**ORDER** |

Pro se Plaintiff John Taheny, who is confined in the Arizona State Prison Complex-Yuma (ASPC-Yuma), filed a civil rights Complaint[1] (Doc. 1) and an Application to Proceed In Forma Pauperis (Doc. 2). The Court will grant the Application to Proceed; substitute current Arizona Department of Corrections, Rehabilitation & Reentry (ADC) Director Ryan Thornell for Defendant David Shinn in his official capacity only; and order Defendants to answer the Complaint.

**I.    Application to Proceed In Forma Pauperis and Filing Fee**

The Court will grant Plaintiff's Application to Proceed In Forma Pauperis. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will assess an initial partial filing fee of $59.22. The remainder of the fee will be collected monthly in payments of 20% of the previous month's income credited to Plaintiff's trust account each time the amount in the account exceeds $10.00.

---

[1] Plaintiff filed his Complaint pursuant to 42 U.S.C. § 1983 and invoked the Court's supplemental jurisdiction over his state law claim.

TERMPSREF

28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

## II.     Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent

standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

### III. Complaint

In his four-count Complaint, Plaintiff sues former ADC Director David Shinn; Centurion of Arizona; Nurse Practitioner Sharon Joshua, and Nurse Buenacosa. Based on common facts, Plaintiff raises Eighth Amendment medical care claims (Counts One, Two, and Three) and a medical negligence claim (Count Four) regarding the diagnosis and treatment of a July 2021 hand injury he suffered at ASPC-Yuma.

Plaintiff makes the following allegations:

On July 29, 2021, Plaintiff fell while playing basketball, heard a loud popping sound, and immediately experienced severe pain, swelling, bruising, and immobility of his left hand. (Doc. 1 at 3.)[2] He immediately submitted a Health Needs Request (HNR). (*Id.*) The following day, a nurse gave him ice and ibuprofen. (*Id.*)

On July 31, 2021, Defendant Buenacosa examined Plaintiff. (*Id.*) Plaintiff explained that his hand was swollen and he was in severe pain. (*Id.*) Defendant Buenacosa diagnosed Plaintiff with a "possible sprain" and ordered x-rays, which were scheduled for August 4, 2021. (*Id.*) Each day at pill call at the medical unit, Plaintiff complained to medical staff, including Defendants Buenacosa and Joshua, that he was having constant pain in his hand, but the medical staff did not further evaluate him or provide further treatment. (*Id.* at 3-4, 7.)

On August 7, 2021, Plaintiff submitted another HNR because his hand had not been x-rayed and he had not received any other treatment. (*Id.* at 4.) Defendant Joshua examined Plaintiff's hand the following day. (*Id.*) Plaintiff's hand was obviously swollen and bruised, and Plaintiff had been experiencing a lack of mobility in his hand. (*Id.*) Defendant Joshua diagnosed the injury as a "sprain" and re-ordered x-rays for August 11. (*Id.*)

---

[2] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

TERMPSREF

- 3 -

1  At a follow-up examination on August 13, 2021, Plaintiff told Defendant Joshua that his hand had not been x-rayed and he was in severe pain. (*Id*.) Plaintiff requested pain medication. (*Id*.) Defendant Joshua refused to prescribe pain medication but authorized Plaintiff to be immediately transported to the regional medical center for a "stat x-ray." (*Id*.) Plaintiff's hand was x-rayed at the regional medical center, and a doctor told Plaintiff his hand was broken, put Plaintiff's hand in a soft cast, and gave Plaintiff pain medication. (*Id*.)

On August 16, 2021, Plaintiff had a consultation with a specialist who performed additional x-rays and reiterated that Plaintiff's hand was broken. (*Id*.) The specialist explained that "[d]ue to [Plaintiff] receiving no treatment immediately after sustaining [the] injury and because [Plaintiff's] finger wasn't set properly or put in a brace," Plaintiff's index finger "did not heal in alignment and it would be permanently shorter." (*Id*.) The specialist explained that the injury "could have been fixed without surgery" if Plaintiff "had been treated immediately after sustaining the injury." (*Id*. at 4-5.)

Plaintiff's hand was put in a hard cast for two months. (*Id*. at 5.) Plaintiff claims his index finger is now permanently disfigured and has limited function. (*Id*.) Plaintiff submitted numerous HNR's complaining of "lingering pain" in his hand and has requested a follow-up appointment with the specialist to evaluate the extent to the damage to his hand. (*Id*.) However, Defendant Centurion's providers have "refused to schedule" a follow-up appointment. (*Id*.)

Plaintiff contends the permanent damage to his hand "would have been avoided by timely medical intervention and treatment." (*Id*. at 7.) Plaintiff asserts he now needs surgical repair and physical therapy because "the initial[ly] untreated broken hand . . . led to nerve damage and [a] limited grasp." (*Id*.) He alleges he has reduced hand function, disfigurement, and nerve damage, and has experienced pain, anxiety, emotional distress, embarrassment, and humiliation. (*Id*. at 3.) Plaintiff seeks an injunction ordering Defendant Shinn to provide physical therapy or other follow-up medical treatment, monetary damages, and his court costs, filing fees, and attorney's fees. (*Id*. at 18.)

In **Count One**, Plaintiff raises an Eighth Amendment claim against Defendants Buenacosa and Joshua.  Plaintiff states that the Court in *Jensen v. Shinn*, CV-12-00601-PHX-ROS, a class-action lawsuit regarding medical care within ADC, determined that between January and July 2021, ASPC-Yuma was substantially non-compliant with requirements that prisoners be seen within 24 hours of submitting an HNR and that officials obtain consultations with specialists.  (*Id*. at 5.)  He claims the plaintiffs in *Jensen* presented expert testimony that there is "a clear pattern of failure by nurses to complete an adequate nursing assessment, take patient reports seriously, recognize dangerous symptoms, and elevate concerns to providers.  Too often, nurses simply send patients back to their housing unit and tell them to submit another written sick call request if symptoms worsen."  (*Id*. at 6.)

Plaintiff asserts Defendants Buenacosa and Joshua misdiagnosed his injury by stating that he had a "possible sprain" and submitted a referral for x-rays, even though Plaintiff's hand "showed obvious signs of being broken."  (*Id*. at 5-6.)  He claims Defendants Buenacosa and Joshua then delayed the referral for x-rays for over two weeks. (*Id*. at 6.)  Plaintiff also alleges that when his pain increased and his swelling did not subside, Defendants Buenacosa and Joshua failed to properly diagnose the cause of the swelling and immobility and failed to request an urgent consultation with a specialist, even though Plaintiff daily complained of increased pain and a lack of mobility in his hand.  (*Id*. at 6-7.)  Plaintiff alleges this treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate Plaintiff's condition."  (*Id*. at 6, quoting *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005).)

Plaintiff alleges Defendants Buenacosa and Joshua "den[ied] treatment at the first instance" and their conduct "harmfully delayed medically necessary treatment without a valid medical excuse." (*Id*. at 7.)  He claims that although Defendants Buenacosa and Joshua each had the ability to refer him for treatment or request an urgent consultation with a specialist when they first examined him, they refused to refer him to a specialist and failed to take steps to ensure he received necessary treatment.  (*Id*. at 5, 7.)  Plaintiff

contends this constitutes deliberate indifference because Defendants Buenacosa and Joshua each "knew of and consciously disregarded [Plaintiff's] serious medical needs by failing to evaluate him, treat him, diagnose him, or refer him for urgent specialist care each knew was medically necessary." (*Id.* at 5.) He claims each "used pretexts" to deny treatment and to "deny making [a] necessary urgent referral for treatment." (*Id.*)

In **Count Two**, Plaintiff raises an Eighth Amendment claim against Defendant Centurion. He claims evidence in *Jensen* shows that Defendant Centurion, as a matter of policy,

(a) "used a policy that delayed/denied treatment when the health problem is unknown by conducting improper diagnostic tests";

(b) had a "system [that] lacks 'the foundation of any credible healthcare practice: differential diagnosis'";

(c) addressed HNRs and inmate grievances "outside the response periods mandated by [ADC]" or "ignored" or did not process them;

(d) refused to "adequately staff and train qualified medical personnel," which "made it highly probable that patients who required urgent medical care by qualified medical professionals would suffer substantial harm";

(e) "decreased the number of outside specialist referrals for medically necessary treatment" to "increase its profitability";

(f) "deliberately delayed medically necessary treatment or referrals to outside specialty care providers";

(g) "delayed treatment and encouraged the exhaustion of less effective treatment[,] like treating recurring complaints by prisoners as 'new' issues at each appointment without taking account of previous diagnoses and history"; and

(h) even when intervention is medically necessary, "permits non-treating staff to deny/overrule referrals for medical treatment for non-medical reasons such as cost, date of onset of condition and length of incarceration."

(*Id.* at 8-9.)

. . . .

Plaintiff alleges Defendant Centurion's unconstitutional policies and practices created "a substantial obvious risk of harm" to Plaintiff, who did not receive medically necessary treatment despite needing an urgent consultation with a specialist or "specialist care and treatment" that could not be performed at an ADC facility. (*Id*. at 8-9.) Plaintiff claims Defendant Centurion "denied and delayed referral to [an] urgent consult[ation]" and was "willing to jeopardize [Plaintiff's] health." (*Id*. at 9.) Plaintiff asserts the failure to schedule an urgent consultation with a specialist for over two weeks "more likely caused permanent damage to [his] left hand" and, as a result, he has suffered unnecessary pain and "added injury." (*Id*.)

In **Count Three**, Plaintiff raises an Eighth Amendment medical care claim against Defendant Shinn. He contends Defendant Shinn, as ADC's Director at the relevant time, was responsible for providing prisoners with a "constitutionally adequate healthcare system." (*Id*. at 10.) Plaintiff claims Defendant Shinn became responsible for the medical care violations when he failed to correct them "in the course of his supervisory responsibilities" and denied Plaintiff's administrative grievance appeals. (*Id*. at 10-11.)

Plaintiff asserts Defendant Shinn was placed on notice of Defendants Centurion, Buenacosa, and Joshua's deliberate indifference through the numerous HNRs Plaintiff submitted and his exhaustion of the administrative grievance process. (*Id*.) Specifically, Plaintiff claims that during the process of exhausting his administrative grievances, he pointed out the "denial/delay in receiving timely medical treatment," that Defendants Buenacosa and Joshua "did not accurately assess [his] medical needs and prevented him from seeing a provider," that there were "significant delays from diagnosis to eventual treatment," that there were delays during treatment, and that "nothing had been done about them." (*Id*. at 10.)

Plaintiff claims Defendant Shinn was aware of Plaintiff's "denial/delay in receiving medical treatment, including follow-up care" and "failed to take any action or intervene and or enforce his rights under the [contract with Defendant Centurion]." (*Id*. at 14.) In asserting Defendant Shinn acted with deliberate indifference, Plaintiff asserts the Court in

*Jensen* found Defendant Shinn (and others) were "acting with deliberate indifference to the substantial risk of serious harm posed by the lack of adequate medical . . . care affecting all prisoners" and had failed to provide, and continued to refuse to provide, an adequate medical care system for ADC's prisoners. (*Id*. at 12.)  He contends the medical issues regarding his hand occurred "around the same time period when the *Jensen* Court had made its conclusions regarding defendant's medical care violation" and he "dealt with similar issues" regarding the "denial/delay in receiving medical care." (*Id*. at 12-13.)

In **Count Four**, Plaintiff raises a medical negligence claim against all Defendants.  He contends Defendants had a duty to provide him with "reasonable medical diagnosis/examination, competent/reasonable treatment, timely referral for treatment, timely follow-up, and timely forwarding of records and scheduling." (*Id*. at 15.)  Plaintiff asserts Defendants Buenacosa, Joshua, and Shinn "knew or reasonably should have known that their conduct would cause Plaintiff to suffer additional harm" because he needed urgent medical care and had a broken hand, swelling, immobility, and worsening symptoms. (*Id*. at 15.)

Plaintiff claims Defendant Centurion had a duty to adequately train and supervise medical staff, but breached its duty by failing to reasonably train and supervise the medical staff. (*Id*.)  Plaintiff also alleges Defendant Centurion "implemented organizational protocols, policies and procedures" governing requests for medical treatment outside the prison, including specialist referrals and treatment. (*Id*. at 16.)  He contends Defendant Centurion knew or should have known "one or more of these protocols, policies or procedure [would] invariably cause the denial of urgent medically necessary care to patients like Plaintiff." (*Id*.)

Plaintiff alleges Defendants breached their duty of care and, as a result, he was denied medically necessary treatment, including a referral for an urgent consultation with a specialist. (*Id*. at 15.)  He claims he suffered "permanent damage to [his] left hand that would have been avoided by timely medical intervention and treatment." (*Id*. at 16.)

. . . .

Plaintiff also contends Defendant Centurion and ADC are liable under respondeat superior for the negligence of their employees, including Defendants Buenacosa, Joshua, and Shinn. (*Id.*)

**IV.   Discussion**

Liberally construed, Plaintiff has stated Eighth Amendment claims against Defendant Buenacosa and Joshua in their individual capacities (Count One), against Defendant Centurion (Count Two), and against Defendant Shinn in his individual and official capacities (Count Three). Plaintiff has also adequately stated medical negligence claims against Defendants in Count Four.

Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court will substitute current ADC Director Ryan Thornell for David Shinn **in his official capacity only**. Defendant Shinn remains a Defendant to this action in his individual capacity. The Court will require Defendants to answer the Complaint.

**V.   Warnings**

**A.   Release**

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a non-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

**B.   Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

**C.   Copies**

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a

TERMPSREF

certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. *See* LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D.     **Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Plaintiff's Application to Proceed In Forma Pauperis (Doc. 2) is **granted**.

(2)     As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $59.22.

(3)     Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Arizona Department of Corrections, Rehabilitation & Reentry Director Ryan Thornell is **substituted** for Defendant Shinn **in his official capacity only**. Defendant Shinn remains a Defendant to this action in his individual capacity. The Clerk of the Court must update the docket accordingly.

(4)     Defendants Shinn, Joshua, and Buenacosa must answer the Complaint in their individual capacities only; Defendant Thornell must answer the Complaint in his official capacity only; and Defendant Centurion must answer the Complaint.

(5)     The Clerk of Court must send Plaintiff a service packet including the Complaint (Doc. 1), this Order, and both summons and request for waiver forms for Defendants Shinn, Thornell, Centurion, Joshua, and Buenacosa.

(6)     Plaintiff must complete[3] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

---

[3] If a Defendant is an ADC officer or employee, Plaintiff must list the address of the

(7) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(8) The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(9) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order.

(10) A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(11) The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

   (a) personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) and/or (h)(1) of the Federal Rules of Civil Procedure; and

   (b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for

---

specific institution where the officer or employee works. Service cannot be effected on an officer or employee at ADC's Central Office unless the officer or employee works there.

photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(12) Defendants must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(13) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(14) This matter is referred to Magistrate Judge John Z. Boyle pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 10th day of March, 2023.

James A. Teilborg
Senior United States District Judge

TERMPSREF